Opinion delivered by
Walker, J.
This is a proceeding under the third section of the Act of 12 July, 1842 (Purdon’s Dig. 50, pl. 53), relative to fraudulent debtors, for a warrant to arrest Jeremiah Wetzel, the *7 defendant, on the ground that he fraudulently, and in the dead of night, on 21 January, 1875, removed from his premises a steam saw mill, boilers, fixtures, and other personal property subject to levy and sale, of the value of $4000, with the intent to defraud the plaintiff in this suit.
The affidavit also sets forth that the defendant is indebted to the plaintiff; that suit has been brought against him, and that he is insolvent.
Upon a hearing of the matter before me, the testimony established the following facts : That the defendant bought from the plaintiff a tract of timber land in Porter township for $10,000, and took possession of the land under an agreement in writing. $3000 have already been paid on account, and there is now due the sum of $3000 more. That the value of the land consisted mainly in the timber, which the defendant cut off from time to time and sold. That there was on the land an old steam saw mill and fixtures, which was rebuilt in part by the *defendant after he purchased the land. That on 21 January last he took down this machinery, and removed it to Spring Station on the Reading railroad, some nine miles away, for the purpose of selling it. That immediately after this, a man by the name of Bard, a judgment creditor of the defendant, issued an execution, levied upon this machinery and sold it for his debts.
The evidence shows that the defendant removed the machinery during most of two days, and that it was conveyed away in teams over the public road.
The only question now is, Did the defendant sever and remove this machinery with the intent to defraud his creditors f And this intent must be-gathered from all the evidence in the case.
There is no evidence that the debt due to Bard was not bona fide, and there ivas no collusion shown with him to levy upon and sell the machinery.
The articles in question were removed in the day-time, and there is no evidence that there was any concealment, and no directions given to the drivers to avoid observation. The road they took was of their own selection, and for their own accommodation. They were deposited at a place where they could be shipped by rail without difficulty, and where there were persons living. I cannot say from this evidence, whatever may be my suspicions, *8 that had the defendant sold the machinery, he would not have applied the proceeds of such sale to the payment of his debts, due to Bard, Neitlinger, or some other creditor. His insolvency is the only suspicious feature, and from that circumstance alone we cannot presume that he intended to defraud his creditors. But the counsel for the plaintiff contends that the mere severance and removal of the machinery and fixtures by an insolvent debtor from his land (without any other circumstance showing an intent to defraud) would be sufficient to hold him to bail or commit him on proceedings like the present, under the Act of Assembly, and he relies on Witner’s Appeal, 9 Wright, 455, to sustain that position; where it was held that an owner of a steam mill property and land, encumbered to an amount greater than its value by dower and judgment liens, cannot sever and remove the engine or other constituent parts of the machinery, so that as personalty they might be levied upon, and sold upon an execution of a subsequent judgment creditor; and that an injunction may issue to restrain such act. A clear case of fraud was made out there, which the court held might be restrained by injunction. But they say they do not wish to be understood as either affirming or denying the broad proposition that equity will, at the suit of a mere judgment creditor, interpose to restrain such acts of a judgment debtor, in possession as owner of real estate, as would *constitute waste at common law. A judgment creditor is not within the Act of 29 March, 1822 (Purdon’s Dig. 1465, pl. 3), until he has brought his debtor’s lands to liability to sale on a venditioni exponas.
While a court of equity will interpose to restrain acts contrary to law and prejudicial to the interests of the community, or the rights of individuals, it does not follow since the passage of the Act of 12 July, 1842, abolishing imprisonment for debt, that a person may be committed for an offence that may be enjoined in equity.
To render himself liable to imprisonment, he must be guilty of one of the specific offences mentioned in the act.
In the absence of fraud, the doctrine laid down in Witner’s Appeal is against the plaintiff, even in an equity proceeding, and we cannot see how it can aid him in this application. See also Clarke’s Appeal, 12 P. F. S. 447.
*9 The gist of the offence here is the removal of defendant’s property, with intent to defraud his creditors, and that fraudulent intent must be established by all the facts in the case. It cannot be presumed.
The testimony does not satisfactorily establish this to my mind to warrant me to commit the defendant or hold him to bail. The complaint is therefore dismissed and warrant quashed.